

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# LONDON

CIVIL ACTION NO. 05-104-GWU

HAROLD HUBBARD,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to

1

Hubbard

Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Hubbard

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Hubbard

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Hubbard

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Harold Hubbard, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, gout, depression, and a pain disorder. (Tr. 24).  Nevertheless, the ALJ determined that Mr. Hubbard retained the residual functional capacity to perform essentially the entire range of "light level" exertion, and proceeded to apply Rule 202.17 of the Commissioner's Medical-Vocational Guidelines (the "grids"), applicable to a younger person with a limited education and unskilled work experience, which directs a conclusion of "not disabled." (Tr. 28-30).[1]  The Appeals Council declined to review, and this action followed.

The ALJ determined that the plaintiff had the residual functional capacity to (1) perform a light level exertion, (2) understand, remember, and persist with routine,

---

[1] No vocational expert appeared at the 2004 administrative hearing.  (Tr. 233).

Hubbard

even paced, straightforward tasks, (3) relate adequately in lower social demand situations, and (4) adapt to predictable, routine task demands. (Tr. 27).

The evidence regarding the plaintiff's mental condition consists primarily of two one-time examinations and the opinions of state agency reviewers who had reviewed a portion of the record.

Dr. Kenneth Starkey, a psychologist, performed a consultative examination of Mr. Hubbard on December 18, 2002, and noted that he described a one year history of depression and irritable mood associated with chronic pain problems, related unemployment and financial problems, and a long history of nicotine dependence. (Tr. 129). Dr. Starkey also assessed probable borderline intellectual functioning. (Id.). The psychologist stated that, taken jointly, the problems created only mild to moderate personal distress and impairment of social and occupational functioning from a psychological perspective at the present time. (Tr. 130). He diagnosed a pain disorder with both a general medical and psychological condition, a mild adjustment disorder with a depressed mood, and nicotine dependence, opioid abuse, and borderline intellectual functioning. (Id.). Mr. Hubbard had reported some relief with the Paxil he had been prescribed, and Dr. Starkey opined that with more formal psychiatric and psychological care, Mr. Hubbard "could" experience improvement in three to six months that would allow vocational training or placement. (Id.). He felt that at the present time, Mr. Hubbard was able to

8

understand and remember simple, 1-2 step instructions without significant difficulty, but his social interactions were generally limited, and he was likely to become somewhat distressed under the pressures found in most day-to-day work settings at the present time. (Tr. 130-1).

Two state agency psychologists completed mental residual functional capacity assessments.

Dr. H. Thompson Prout completed his assessments on January 21, 2003, and indicated that the plaintiff would be between "not significantly limited" and "moderately limited" in many areas such as handling detailed instructions, maintaining attention and concentration for extended periods, interacting appropriately with the general public, and responding appropriately to changes in the work settings. (Tr. 158-9). However, he felt that the plaintiff had the capacity to perform in work situations to the extent given by the ALJ in the hypothetical question, supra. (Tr. 160). Another state agency reviewer, Dr. Laura Cutler, completed her mental residual functional capacity form on May 7, 2003, and indicated that she affirmed Dr. Prout's prior decision. (Tr. 188). However, in terms of specific limitations, she found somewhat different restrictions, stating that the plaintiff would have no more than a "moderately limited" ability to maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 186-7). Neither of the

9

Hubbard

evaluators appeared to address Dr. Starkey's opinion that the plaintiff would be "distressed" under pressures found in most day-to-day work settings.

The ALJ did not reconcile the discrepancies between the two evaluators in his decision, despite the Commissioner's regulations at 20 C.F.R. Section 404.1527(f)(2)(i), which provide, inter alia, that ALJs "must consider findings of state agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination [of disability]." Particularly in view of the fact that this is a "grids" case with no vocational expert, the extent of the plaintiff's non-exertional restrictions is very important, since use of the grids in the presence of significant non-exertional impairments is improper.

The problems are also highlighted by the plaintiff's subsequent examination by a psychiatrist at a Comprehensive Care Center, Dr. John Schremly, who began treatment of Mr. Hubbard in August, 2003, on referral from his family physician. (Tr. 142). Dr. Schremly diagnosed a moderate major depressive episode with a Global Assessment of Functioning (GAF) score of 55 and prescribed the antidepressant medication Lexapro. (Tr. 143). A GAF score of 55 represents moderate impairment in social, occupational, or school functioning, per the Diagnostic and Statistical Manual of Mental Disorders, (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Starkey had assigned a GAF of 61, which represents only mild problems. Thus, the information from the treating source, which was not available to the state agency

10

Hubbard

reviewers, may well indicate that the plaintiff's condition had worsened since the time of Dr. Starkey's interview, when he had suggested that the plaintiff would require three to six months of counseling in order to undergo vocational training or placement, which in itself suggests at least temporary disability.

For these reasons, a remand will be required in order to obtain additional specific information about the plaintiff's mental status.

This the ___25___ day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11